No. 16-cv-6054

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

In re SABINE OIL & GAS CORPORATION, et al.,
Debtors.

OFFICIAL COMMITTEE OF UNSECURED CREDITORS, et al.,
Appellants,

v.

SABINE OIL & GAS CORPORATION, et al.,
Appellees.

Appeal from United States Bankruptcy Court for the Southern District of New York
Chapter 11 Case No. 15-11835 (SCC) Jointly Administered

**REPLY IN SUPPORT OF
EMERGENCY MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS FOR STAY PENDING APPEAL OF THE BANKRUPTCY COURT'S
ORDER CONFIRMING THE DEBTORS' SECOND AMENDED PLAN OF
<u>REORGANIZATION</u>**

Mark R. Somerstein
Keith H. Wofford
C. Thomas Brown
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, NY 10036-8704
Tel: (212) 596-9000

Justin Florence (*pro hac vice* pending)
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: (617) 951-7000

Douglas Hallward-Driemeier (*pro hac vice* pending)
**ROPES & GRAY LLP**
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: (202) 508-4600

# **TABLE OF CONTENTS**

I. The Confirmation Order Impermissibly Seeks to Divest the Second Circuit of Jurisdiction over the Pending *STN* Appeal ................................................................1

II. The Limited Stay Requested Is Not a Modification of the Plan, but Preserves the Court's Ability to Fashion Relief if the Committee's Appeals Are Successful .....................4

III. This Court Should Grant the Proposed Limited Stay .............................................................5

    A. *This Court Must Undertake Its Own Independent Assessment of the Stay* ...............5

    B. *The Committee Faces Irreparable Injury if the Stay Is Denied and Either of Its Two Appeals Become at Risk of Mootness* ................................................................6

    C. *The Committee Has a Substantial Possibility of Success on Its Appeals* ..................7

    D. *The Limited Stay Sought by the Committee Will Not Harm Other Parties, and There Is No Need for a Bond* ......................................................................................9

CONCLUSION............................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*ACC Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*,
    361 B.R. 337 (S.D.N.Y. 2007) ................................................................................. 5, 6

*Ad Hoc Comm. of Equity Holders of Republic Airways Holdings, Inc. v. Republic*
    *Airways Holdings, Inc. (In re Republic Airways Holdings Inc.)*,
    No. 16-cv-3315, 2016 WL 2621990 (S.D.N.Y. May 6, 2016) ........................................ 5

*Ahuja v. LightSquared Inc.*,
    --- F. App'x ----, No. 15-2480, 2016 WL 1105109 (2d Cir. Mar. 22, 2016) .................. 6

*In re Calpine Corp.*,
    No. 05-60200 (BRL), 2008 WL 207841 (Bankr. S.D.N.Y. Jan. 24, 2008) ................ 4, 5

*Cibro Petroleum Prods., Inc. v. Albany (In re Winimo Realty Corp.)*,
    270 B.R. 99 (S.D.N.Y. 2001) ..................................................................................... 2, 3

*Dish Network Corp. v. DBSD N. Am., Inc. (In re DBSD N. Am., Inc.)*,
    634 F.3d 79 (2d Cir. 2011) ............................................................................................. 8

*In re Envirodyne Indus., Inc.*,
    29 F.3d 301 (7th Cir. 1994) ........................................................................................... 4

*In re Permian Prods. Drilling, Inc.*,
    263 B.R. 510 (W.D. Tex. 2000) ..................................................................................... 6

*In re Prudential Lines, Inc.*,
    170 B.R. 222 (S.D.N.Y. 1994) ....................................................................................... 1

*Whispering Pines Estates, Inc. v. Flash Island, Inc. (In re Whispering Pines Estates,*
    *Inc.)*,
    369 B.R. 752 (B.A.P. 1st Cir. 2007) .............................................................................. 3

**STATUTES AND RULES**

11 U.S.C. § 1102(a)(2) ....................................................................................................... 10

11 U.S.C. § 1127(b) .............................................................................................................. 4

Fed. R. Bankr. P. 8007(b) ..................................................................................................... 5

Fed. R. Bankr. P. 9019 ..................................................................................................... 8, 9

Appellees erroneously assert that this Court is virtually powerless—limited to only the most deferential review—to stay the Bankruptcy Court's Confirmation Order, which has the avowed purpose of cutting off Second Circuit review of the Bankruptcy Court's earlier *STN* ruling. That argument turns things on their head. Under basic principles of appellate jurisdiction, once an order is appealed, the order-rendering court loses jurisdiction to make further rulings that would defeat appellate review. But even apart from that threshold jurisdictional flaw in the Confirmation Order, the Court should grant the limited stay requested by the Committee, which is narrowly tailored to allow the Debtors to emerge from bankruptcy, under the control of the RBL Lenders. Appellees' counter-arguments all amount to reformulations of their basic theme: that they have a right to scuttle the *STN* Appeal pending in the Second Circuit and effectively attempt to preclude *any* review of the Confirmation Order by an Article III court. They have no such right. A bankruptcy court's constitutional authority depends on review by Article III courts, and Appellees' attempts to prevent that review raises grave constitutional concerns. This Court should avoid those concerns by granting the requested stay pending appeal.

I. **THE CONFIRMATION ORDER IMPERMISSIBLY SEEKS TO DIVEST THE SECOND CIRCUIT OF JURISDICTION OVER THE PENDING *STN* APPEAL**

The Committee's stay motion rests on a simple proposition: once a bankruptcy court order is on appeal before an Article III tribunal, the bankruptcy court cannot issue a second order that would terminate the pending appeal. "It is well established that the filing of an appeal divests the lower court of its control over matters on appeal." *In re Prudential Lines, Inc.*, 170 B.R. 222, 243 (S.D.N.Y. 1994). A "lower court may take no action which interferes with the appeal process or with the jurisdiction of the appellate court." *Id.* Because the viability of the proposed *STN* claims is on appeal, the Bankruptcy Court lacked authority to take action that

would divest the Second Circuit of jurisdiction over the case already pending before it.

But the Confirmation Order and Plan do seek to divest the Second Circuit of jurisdiction over the *STN* Appeal.  They purport to expressly cut off the Committee from pursuing the claims that are the subject of that appeal, purporting to grant releases to the would-be defendants and bar the filing of any claims, even if the Second Circuit upheld the viability of the Committee's proposed causes of action.  *See, e.g.*, Conf. Order ¶ 63 (Bankr. July 27, 2016), ECF No. 1359. The RBL Agent already argued that such a provision would make the *STN* Appeal constitutionally moot.  *See infra* p. 6.  And Debtors acknowledge (Opp'n 5) that they too will argue that the Confirmation Order prevents the Second Circuit's consideration of the *STN* Appeal.

Contrary to Debtors' suggestion (Opp'n 20), the release provisions do not merely implement or enforce the *STN* Order.  "Any actions that interfere with the appeal process . . . are beyond mere 'enforcement' and are therefore impermissible."  *Cibro Petroleum Prods., Inc. v. Albany (In re Winimo Realty Corp.)*, 270 B.R. 99, 106 (S.D.N.Y. 2001).  The Confirmation Order and Plan, by design, attempt to interfere with the appeal in just that way.  The *STN* Order itself denied the Committee derivative standing to pursue the *STN* claims on behalf of the estates; no further action was necessary to preclude the Committee from pursuing those claims pending the appeal.  The Bankruptcy Court even acknowledged that point in denying the Committee's proposed *STN* stay, reiterating that its *STN* opinion "contain[ed] no ruling with respect to releases" and that "whether the Court should confirm a plan containing releases of certain claims is entirely distinct from the issue of" granting *STN* standing.  Order 5 (Bankr. May 5, 2016), ECF No. 1065.  It is only now, in the Confirmation Order and Plan, that the Bankruptcy Court has purported to grant releases and otherwise bar filing of the proposed *STN* claims, even if the *STN*

Appeal were successful.  This is precisely the kind of "expand[ing]" of the *STN* order that the appellate divestiture doctrine prohibits.  *Winimo Realty*, 270 B.R. at 105-06; *see also Whispering Pines Estates, Inc. v. Flash Island, Inc. (In re Whispering Pines Estates, Inc.)*, 369 B.R. 752, 759 (B.A.P. 1st Cir. 2007).

The Debtors offer no plausible justification for the releases and related provisions, other than to foreclose the Committee's appeal rights.  That is most glaringly obvious with respect to the gratuitous releases granted to the former Forest Directors & Officers for no consideration.  Because the Debtors have already determined not to pursue the proposed claims against them, the only purpose to release those claims is to attempt to moot the *STN* Appeal.  The RBL Agent implies that relinquishment of the RBL-related CFC claims is a "settlement," but the Bankruptcy Court said otherwise, noting that "[t]he Plan doesn't settle the constructive fraudulent conveyance claims," but rather releases them.  Bankr. Stay Tr. 55:8-9, July 27, 2016.  Moreover, the purported consideration for the RBL releases is purely illusory.  The Debtors and the RBL Agent point to a loan from the RBL Lenders, but the Debtors anticipate drawing just $10 million of $150 million available and anticipate no further borrowing needs for two years.  Moreover, no evidence was adduced to show that this exit loan was offered on more favorable terms than those generally available in the market.  *See, e.g.*, Bankr. Hr'g Tr. 203-04, June 13, 2016; Bankr. Hr'g Tr. 164-165, June 22, 2016.  Nor was the RBL Lenders' agreement to convert their claims from debt to equity in the plan (RBL Agent Opp'n 1; Debtors' Opp'n 6) consideration for the releases.  The chief difference between that arrangement and the alternative—sale of the company as a going concern—in terms of value to the RBL Lenders was the releases.  Accepting equity was not fair consideration for releasing claims that could have brought the estates considerable value.

The releases and related provisions of the Plan and Confirmation Order were designed to

cut off the Second Circuit's review of the *STN* ruling. That is precisely what the appellate divestiture doctrine precludes, and this Court owes no deference to the Bankruptcy Court in reviewing that threshold legal question regarding the Bankruptcy Court's jurisdiction.

## II. THE LIMITED STAY REQUESTED IS NOT A MODIFICATION OF THE PLAN, BUT PRESERVES THE COURT'S ABILITY TO FASHION RELIEF IF THE COMMITTEE'S APPEALS ARE SUCCESSFUL

Appellees err in asserting that a limited stay of the distribution of certain stock to the RBL Lenders would be a "modification" of the Plan under 11 U.S.C. § 1127(b). If the Committee's appeals fail, the RBL Lenders will receive all value provided for in the Plan, and there would be no change to the Plan's terms. The proposed stay would only "modify" the Plan if the Committee's appeals succeed, which would necessarily mean that the Confirmation Order was erroneous. Of course, nothing prevents an Article III court that concludes that a plan was approved in error from ordering appropriate relief, such as ordering that the RBL Lenders were not entitled to have the Debtors' equity apportioned on the basis of obligations that would have been avoided. Appellees' argument is really that any reallocation of stock distributions as a remedy following a successful appeal is an impermissible plan modification. That would transform 11 U.S.C. § 1127(b) into a statutory mootness provision that effectively precludes any appellate review of confirmation orders, and that is not the law. Courts regularly order modifications of plans on appeal. More specifically, there is no question a reviewing court "could order the bankruptcy judge to modify the plan of reorganization to reallocate [millions of dollars] worth of the stock that [one class of creditors] received to the appellants." *In re Envirodyne Indus., Inc.*, 29 F.3d 301, 304 (7th Cir. 1994) (Posner, J.). And Appellees' only authority is a single, easily distinguishable case, in which shareholders that failed to object to plan confirmation sought a stay pending appeal. *In re Calpine Corp.*, No. 05-60200 (BRL), 2008 WL 207841, at *3 (Bankr. S.D.N.Y. Jan. 24, 2008). The shareholders sought issuance of

300,000 additional shares, not provided for in the plan, that would have caused significant decline in the shares' market value; the *Calpine* court rightly found that request to be an impermissible plan modification.  *Id.* at *6.  In contrast, the Committee deliberately did not request the issuance of additional shares that would dilute share value, instead requesting a stay that would not impact the RBL Lenders' majority ownership position or ability to sell the company.  Appellees' insistence that the Plan cannot be changed once approved is just a variant of their theme that a bankruptcy court, not the Article III courts, gets the last word.

### III.    THIS COURT SHOULD GRANT THE PROPOSED LIMITED STAY

#### A.    *This Court Must Undertake Its Own Independent Assessment of the Stay*

"[W]hether to issue a stay of an order pending appeal lies within the sound discretion of the district court."  *ACC Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. 337, 346 (S.D.N.Y. 2007).  The Committee's motion is before the Court pursuant to Bankruptcy Rule 8007(b), not on appeal from denial of a stay.  Thus, this Court should conduct "its own, independent review of the evidence" *Ad Hoc Comm. of Equity Holders of Republic Airways Holdings, Inc. v. Republic Airways Holdings, Inc. (In re Republic Airways Holdings Inc.)*, No. 16-cv-3315, 2016 WL 2621990, at *7 (S.D.N.Y. May 6, 2016).  While the Bankruptcy Court's findings of fact are reviewed for clear error, it is equally true that "the Bankruptcy Court's legal conclusions [are reviewed] de novo."  *Id.* at *6 (citation omitted).  Thus, even if the Court gets beyond the threshold jurisdictional issue above, which is a question of law on which the Bankruptcy Court is owed no deference, Appellees are mistaken in suggesting that this Court is limited to deferential review of the Bankruptcy Court's refusal to grant a stay.  Indeed, deference would be particularly inappropriate here, where the Bankruptcy Court has yet to issue a written opinion explaining the reasoning that supports the Confirmation Order that is the subject of this appeal, prohibiting the Committee from identifying with

300,000 additional shares, not provided for in the plan, that would have caused significant decline in the shares' market value; the *Calpine* court rightly found that request to be an impermissible plan modification.  *Id.* at *6.  In contrast, the Committee deliberately did not request the issuance of additional shares that would dilute share value, instead requesting a stay that would not impact the RBL Lenders' majority ownership position or ability to sell the company.  Appellees' insistence that the Plan cannot be changed once approved is just a variant of their theme that a bankruptcy court, not the Article III courts, gets the last word.

### III.    THIS COURT SHOULD GRANT THE PROPOSED LIMITED STAY

#### A.    *This Court Must Undertake Its Own Independent Assessment of the Stay*

"[W]hether to issue a stay of an order pending appeal lies within the sound discretion of the district court."  *ACC Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. 337, 346 (S.D.N.Y. 2007).  The Committee's motion is before the Court pursuant to Bankruptcy Rule 8007(b), not on appeal from denial of a stay.  Thus, this Court should conduct "its own, independent review of the evidence" *Ad Hoc Comm. of Equity Holders of Republic Airways Holdings, Inc. v. Republic Airways Holdings, Inc. (In re Republic Airways Holdings Inc.)*, No. 16-cv-3315, 2016 WL 2621990, at *7 (S.D.N.Y. May 6, 2016).  While the Bankruptcy Court's findings of fact are reviewed for clear error, it is equally true that "the Bankruptcy Court's legal conclusions [are reviewed] de novo."  *Id.* at *6 (citation omitted).  Thus, even if the Court gets beyond the threshold jurisdictional issue above, which is a question of law on which the Bankruptcy Court is owed no deference, Appellees are mistaken in suggesting that this Court is limited to deferential review of the Bankruptcy Court's refusal to grant a stay.  Indeed, deference would be particularly inappropriate here, where the Bankruptcy Court has yet to issue a written opinion explaining the reasoning that supports the Confirmation Order that is the subject of this appeal, prohibiting the Committee from identifying with

particularity its arguments for appeal. It would be "somewhat absurd" to review with deference the bankruptcy court's denial of a motion to stay its own order in light of the difficulty an appellant would have in persuading the bankruptcy court that its just-issued confirmation order might be reversed. *See In re Permian Prods. Drilling, Inc.* 263 B.R. 510, 514-15 (W.D. Tex. 2000) (noting further that "the absence of findings of fact and conclusions of law other than the rulings themselves makes a review of the Bankruptcy Court's rulings for abuse of discretion problematic").

### B.   *The Committee Faces Irreparable Injury if the Stay Is Denied and Either of Its Two Appeals Become at Risk of Mootness*

The Debtors fail to confront the irreparable injury identified by the Committee in its motion. The Committee seeks a limited stay to preserve its rights to appellate review of both the Confirmation Order and the *STN* Order. The Committee's motion cites substantial precedent holding that possible mootness of the appeal *sub judice* constitutes irreparable injury. Mot. ¶ 36 (citing cases). The "loss of appellate rights is a quintessential form of prejudice." *Adelphia*, 361 B.R. at 347-48 (internal quotation marks and citation omitted). Here, where the confirmation order threatens to moot a separate, earlier appeal, this factor favors a stay even more heavily.

The risk and degree of the Committee's injury is further heightened by the nature of Appellees' mootness arguments. Although the Committee vigorously disputes that either of its appeals would be rendered moot by the Plan becoming effective, Appellees have already made clear that they will argue that the Confirmation Order renders the *STN* Appeal not merely "equitably moot," a "prudential doctrine" that can be set aside, *Ahuja v. LightSquared Inc.*, --- F. App'x ----, No. 15-2480, 2016 WL 1105109, at *1 (2d Cir. Mar. 22, 2016), but also constitutionally moot, *see* RBL Agent Br. 13, No. 16-cv-2561 (S.D.N.Y May 17, 2016), ECF No. 32 (arguing that "there is no live controversy" because of the releases). Appellees'

contention that the Article III courts will lose constitutional jurisdiction even to hear the Committee's pending *STN* Appeal, *see STN* Appeal Oral Arg. Tr. 114, No. 16-cv-2561 (S.D.N.Y. June 10, 2016), magnifies the Committee's risk of injury far beyond cases involving only a possible argument about equitable mootness.

None of the Debtors' cases on irreparable injury addresses the serious constitutional question raised by a bankruptcy court order purporting to cut off Article III review. During the *STN* Appeal, this Court noted (in the context of the RBL Agent's argument that the Cash Collateral Order's challenge deadline mooted the *STN* Appeal), the significant questions that scenario would present. *STN* Appeal Oral Arg. Tr. 121 (observing that "it would be exceedingly odd to have effectively a decision of the bankruptcy court that was unappealable"). That issue was not ripe during the *STN* Appeal because the Cash Collateral Order allowed the deadline to be extended, and the Bankruptcy Court had "decline[d] to rule on the Committee's request for a stay of the effectiveness of the *STN* Order to the extent it would cause the expiration of the Challenge Deadline set forth in the Cash Collateral Order." Order 14-15, Bankr. ECF No. 1065. The issue has become live because the Confirmation Order states, *inter alia*, that various would-be defendants "shall not be subject to any other or further challenge by the Committee or any other party in interest seeking to exercise the rights of the Debtors' estates (including, without limitation, any successor thereto)." Conf. Order ¶ 63, Bankr. ECF No. 1359. Appellees will once again argue that the Bankruptcy Court has cut off the Committee's right to bring the *STN* claims, even if the Committee's Second Circuit appeal is successful. This Court can avoid that serious constitutional issue by granting the requested stay.

**C.** *The Committee Has a Substantial Possibility of Success on Its Appeals*

Appellees miss the mark in discounting the Committee's substantial possibility of success on its two appeals. As to the Confirmation Order appeal, the Committee has a substantial

possibility of success on several grounds. Of course, because the Bankruptcy Court has not issued a written opinion, the Committee cannot identify specific grounds for reversal, and that fact alone weighs in favor of a stay. *See supra* pp. 5-6. And even absent an opinion, the Committee has already demonstrated a substantial possibility for obtaining reversal of the provisions that would close off the Committee's ability to pursue its *STN* Appeal. *See supra* Part I.

Moreover, even if the Bankruptcy Court had authority to issue a confirmation order with provisions that purport to block the Committee's pending appeal, the Committee has a substantial possibility of success on its argument that the legal requirements for granting releases are not met here. Appellees err in asserting that the "settlement" granting releases is subject to deferential review under Bankruptcy Rule 9019. Rule 9019 has no relevance to numerous provisions of the Plan that simply violate the Bankruptcy Code, such as improper substantive consolidation, voting irregularities, allowance of secured claims in amounts that contradict the evidence, and other matters. Doctrines that otherwise circumscribe review do not shield a "bankruptcy court [order that] committed a fundamental error such as . . . not following another of the numerous requirements of § 1129." *Dish Network Corp. v. DBSD N. Am., Inc. (In re DBSD N. Am., Inc.)*, 634 F.3d 79, 91 (2d Cir. 2011). And, while some claims are settled in the Plan, that is not the case for the Committee's principal proposed *STN* claim—the constructive fraudulent conveyance claim. The Bankruptcy Court specifically stated that "[t]he Plan doesn't settle the constructive fraudulent conveyance claims." Bankr. Stay Tr. 55. And, as explained above, the Debtors identify no consideration at all that they have received for granting releases to the Forest D&Os, and the purported consideration from the Lenders is illusory. *See supra* p. 3. And, again, the fact that the Bankruptcy Court has not yet issued its opinion explaining its

rationale behind the Confirmation Order makes assessing that order under the Rule 9019 standard next to impossible. Rule 9019 would not, in any event, protect the Confirmation Order from substantial risk of being reversed if the Second Circuit finds the *STN* claims colorable. If it did, releasing those valuable claims for no consideration would be *per se* unreasonable as a matter of law.

### D. *The Limited Stay Sought by the Committee Will Not Harm Other Parties, and There Is No Need for a Bond*

The Debtors offer no evidence and can identify no way in which they would be directly injured by the limited stay the Committee requests. Indeed, unlike in the cases cited by the Debtors (Opp'n 15) the Bankruptcy Court made no findings (and no evidence was submitted) as to any harm that would inure from the stay. Instead, their argument is that they would be harmed because, in response to the stay, the RBL Lenders would "blow up" the Plan—and this in turn would require an alternative source of financing and delay the restructuring. *Id.* Of course, the only reason the RBL Lenders would "blow up" the Plan if the releases were stayed is because they recognize the very serious legal arguments that the Committee's *STN* Appeal presents. But the RBL Lenders have no right to insist on termination of the Committee's appeal to the Second Circuit. Moreover, as set forth above, p. 3, the Debtors have offered no evidence that they could not obtain comparable financing elsewhere in the market. That is the only situation in which an injury would arise from the RBL Lenders pulling the exit financing. The testimony at confirmation was that only $10 million of financing is needed to exit bankruptcy, for a company worth hundreds of millions of dollars. And the Debtors' own financial projections that form the basis of the Confirmation Order show that the Debtors will not borrow any additional funds for two years—a period after which the appeals will be concluded. There is no harm from lack of this financing.

The remaining contentions of harm are without merit. The notion that the company will "burn a tremendous amount of value" if it does not emerge from bankruptcy (Debtors. Opp'n 15-16) is a red herring; the fees the estate is incurring in bankruptcy were largely a matter of Debtors' own choice because, *inter alia*, they had no obligation to pay the costs of the lenders who were undersecured, and, in any event, those fees will not be the same on appeal. And while Appellees claim that they will incur significant litigation costs if no stay is granted, RBL Agent Br. 5, the only remaining litigation costs regarding the *STN* claims are the costs of appeal—and that will be pursued in all circumstances (albeit with the greater expense of litigating mootness). Costs beyond the appeal would only be expended if the Second Circuit upholds the Committee's legal theories, in which case the cost of pursuing those claims would be dwarfed by the significant value the claims would recover for the estates.

Finally, the Debtors' arguments for a bond are misplaced. They rest principally on the supposition, answered *supra* Part II, that the requested stay would represent a modification of the Plan or a full stay. In fact, the proposed stay has been carefully crafted so that if the Committee does not succeed on its appeals, the Plan will go forward exactly as set forth in the Confirmation Order. There will have been no harm to the Debtors or any other party, and so there is no need for a bond to protect them in the event the Committee does not succeed. It is only if the Committee's appeals succeed that the Confirmation Order and Plan would be disrupted—but bonds are not intended to protect Appellees against the chance they may lose an appeal. And even if a bond were appropriate (which it is not), the Committee, as a statutory body with no funds of its own, 11 U.S.C. § 1102(a)(2), should not be required to post one.

## CONCLUSION

For the foregoing reasons, and those set forth in the Committee's emergency motion, this Court should grant the Committee the requested stay.

Dated:  August 6, 2016

Respectfully submitted,

ROPES & GRAY LLP

*/s/ Mark R. Somerstein*

Mark R. Somerstein
Keith H. Wofford
C. Thomas Brown
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York 10036-8704
Tel: (212) 596-9000
Fax: (212) 596-9090
mark.somerstein@ropesgray.com
keith.wofford@ropesgray.com
thomas.brown@ropesgray.com

Douglas Hallward-Driemeier (*pro hac vice* pending)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: (202) 508-4600
Fax: (202) 508-4650
douglas.hallward-driemeier@ropesgray.com

Justin Florence (*pro hac vice* pending)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: (617) 951-7000
Fax: (617) 951-7050
justin.florence@ropesgray.com

*Counsel for the Official Committee of Unsecured Creditors*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of August, 2016, a copy of the foregoing document has been filed with the United States District Court for the Southern District of New York by electronic case filing/case management. Courtesy copies will be served pursuant to the Court's August 5, 2016 Order, Dkt. No. 27. All counsel of record are being served this filing by either the court's electronic filing system or by telefaxing and/or placing a copy of same in the United States mail, properly addressed, and with adequate postage affixed thereon.

    /s/ *Mark R. Somerstein*
Mark R. Somerstein
*Counsel to the Official Committee*
*of Unsecured Creditors*